DECISION.
{¶ 1} Defendant-appellant Ryan Waford broke into a Marathon gas station where he had previously worked, forced open the cash register, and took cash plus two cartons of cigarettes. Waford was convicted of breaking and entering,[1] a fifth-degree felony, and sentenced to two years of community control. We affirm.
 I. View of a Hat and a Face {¶ 2} At Waford's trial, Meenu Gupta, the owner of the gas station, testified. Gupta stated that Waford had worked for her and her husband at the gas station for about eight to ten weeks. Waford ran the cash register and also did other general duties.
 {¶ 3} Gupta explained that the gas station store had a security system that included five cameras and an alarm. Employees would turn the alarm on and off by using a code on a keypad by the back door. When he worked for them, Waford was being trained to close the store at night and had learned to turn the alarm off and on.
 {¶ 4} Waford's employment ended about one and a half months before the store was broken into. Gupta did not change the code for the alarm in the time between when Waford's employment ended and when the store was broken into.
 {¶ 5} The store's security cameras recorded the break-in, which happened at about 1:30 in the morning. Later in the morning, Gupta viewed the video-disc recording of the break-in and immediately identified Waford as the perpetrator. Gupta testified, "Ryan was wearing a hat he always wore. Side-view, there is no mistake."
 {¶ 6} Susan Davis, an employee at the gas station, testified that she had worked with Waford, and that she also knew him because he was a frequent customer at the store. She testified that, the morning of the break-in, she viewed the recording of the crime and recognized Waford as the perpetrator. The recording itself was introduced in evidence, and we have viewed it to determine if it was of sufficient quality to allow examination. It was.
 II. The Dogs that Didn't Bark {¶ 7} Waford testified in his own defense. Waford denied that he had broken into the gas station. He claimed that, on the day before the break-in, he had worked a full day for his father's drywalling company and then was at home the entire evening and through the night.
 {¶ 8} Waford's mother, Jennifer Heath, testified that Waford lived with her and was at home the entire night of the break-in. Heath's boyfriend, Michael Tangi, also lived in the house. Tangi testified that Waford had worked with him all day at a carpet company on the day before the break-in. According to Tangi, Waford was then at home all night.
 {¶ 9} Waford, Heath, and Tangi all testified that they owned dogs that would have barked and alerted the household if anybody had come into or had left the house at night. Heath and Tangi both claimed that the dogs never barked on the night of the break-in.
 {¶ 10} Waford waived a jury, and after a bench trial the judge, perhaps not being a Sherlock Holmes fan, found Waford guilty.
 III. Evidence was Sufficient {¶ 11} On appeal, Waford argues that his conviction was not supported by sufficient evidence, and that it was against the manifest weight of the evidence.
 {¶ 12} In criminal cases, the legal concepts of sufficiency of the evidence and weight of the evidence are distinct.[2]
A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law.[3] The relevant inquiry in a claim of insufficiency is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proved beyond a reasonable doubt.[4]
 {¶ 13} A challenge to the weight of the evidence attacks the credibility of the evidence presented.[5] When evaluating a claim that a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[6] The discretionary power to reverse should be invoked only in exceptional cases "where the evidence weighs heavily against the conviction."[7]
 {¶ 14} To prove that Waford had committed breaking and entering, the state had to show that Waford, by force, stealth, or deception, trespassed in an unoccupied structure with the purpose to commit a theft offense within. The state presented two witnesses. Both knew Waford and, upon viewing the recording of the break-in, immediately identified Waford as the person who had entered the store and forced open the cash register.
 {¶ 15} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of breaking and entering proved beyond a reasonable doubt. Though Waford offered the testimony of his mother and his mother's boyfriend that he was at home at the time of the break-in, it was up to the trier of fact to weigh the credibility of each witness. We conclude that the trier of fact did not lose its way, and that Waford's conviction was not against the manifest weight of the evidence.
 {¶ 16} Therefore, we overrule Waford's assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] R.C. 2911.13(A).
[2] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
[3] Id.
[4] See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[5] See State v. Thompkins, supra, at 387.
[6] See id.; State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[7] See State v. Martin, supra.